UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

COURTNEY WILEY,

        Plaintiff,

v.

NORTHEAST METRO INTERMEDIATE
SCHOOL DISTRICT 916; MEGAN
McALLISTER, in her official and individual
capacities; and SCOTT THOMAS, in his
individual and official capacities,

        Defendants.

Case No. 25-CV-3685 (PJS/DLM)

ORDER

---

Courtney Wiley, plaintiff pro se.

Kristin C. Nierengarten and Marcus B. Jardine, SQUIRES,
WALDSPURGER & MACE P.A., for defendants.

Plaintiff Courtney Wiley was employed as a teacher by defendant Northeast

Metro Intermediate School District 916 ("the District"). Wiley brings this action against

the District and defendants Megan McAllister (the District's human-resources director)

and Scott Thomas (a District administrator), alleging that her rights—including her

rights to free speech, due process, and equal protection—were violated by the

termination of her employment and by post-termination events.

This matter is before the Court on defendants' motion for judgment on the pleadings. For the reasons that follow, defendants' motion is granted, and Wiley's complaint is dismissed with prejudice.

## I. BACKGROUND

Wiley's complaint makes the following allegations, which the Court assumes are true for purposes of ruling on defendants' motion:

Wiley taught for the District during the 2023–2024 school year. Compl. § III. On January 18, 2024, Wiley reported a student that she suspected of possessing a gun and Xanax to an on-campus officer from the Fridley Police Department. Compl. ¶ 1. Wiley did not report the incident to her principal or assistant principal. Compl. ¶ 1. (According to defendants, Wiley's decision to report the student to the police—and not to alert any school administrator—violated District policies. ECF No. 25 at 2–3.)

The next day, Thomas interviewed Wiley. Compl. ¶ 3. The school principal and a union representative were present at the interview. Compl. ¶ 3. Following the interview, Thomas placed Wiley on paid administrative leave without a written explanation. Compl. ¶ 3. The District allowed the student at issue to return to school almost immediately. Compl ¶ 4. In addition, District officials (including Thomas) disclosed Wiley's identity to the student. Compl. ¶ 5. The student was able to contact

Wiley through Wiley's Infinite Campus account, which remained active despite her being on leave.  Compl. ¶ 4.

On January 31, 2024, Wiley attended a meeting with Thomas and McAllister. Compl. ¶ 6.  Wiley was accompanied by her union representative, as well as by her sister.  Compl. ¶ 6.  Thomas and McAllister informed Wiley that she would be terminated, with no opportunity to respond or defend herself.  Compl. ¶ 7.  Thomas and McAllister gave Wiley the option to resign in lieu of termination.  Compl. ¶ 8. Wiley, who was under "extreme financial and emotional duress," negotiated for a resignation effective February 29, 2024.  Compl. ¶ 9.

On February 26, 2024—almost a month after the meeting—Wiley signed a "Resignation Agreement and Release of All Claims."  Boe Decl. Ex. A ("Release"). Wiley alleges that the resignation was coerced and constituted a constructive discharge, pointing out that she received unemployment benefits.  Compl. ¶¶ 10–11.

Wiley alleges that Thomas and McAllister retaliated against her following her resignation, including by tampering with her mail; surveilling her at public events; submitting false and defamatory information to licensing authorities and the Minnesota Attorney General's office; and causing her to lose an internship.  Compl. ¶¶ 12–14.

## II.  ANALYSIS

### A.  Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is assessed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *York v. Wellmark, Inc.*, 965 F.3d 633, 638 (8th Cir. 2020).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(c) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d).  But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).  "Documents necessarily embraced by the pleadings include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Ashanti v.*

*City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation and quotation marks omitted).

### B.  Release

Wiley brings six claims: (1) First Amendment retaliation; (2) violation of the Due Process Clause; (3) violation of the Equal Protection Clause; (4) intentional infliction of emotional distress; (5) defamation; and (6) disability discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

Defendants argue that Wiley gave up all of these claims when she signed the Release.  The Court agrees that Wiley released all claims that relate to the termination of her employment or anything that occurred before she signed the Release.  She did not, however, release claims that relate to events that occurred after she signed the Release. Release § 11(a).

Release is an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1); *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 n.9 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading.").  If an affirmative defense is established on the face of the complaint, however, it may serve as a proper ground for dismissal.  *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).  The "face of the complaint"

includes "the materials properly before [the court] on a motion to dismiss, which may include public records and materials embraced by the complaint."[1]  *Id.*

The Release states, in relevant part, as follows:

> 10.    Employee hereby fully and completely releases, acquits, and forever discharges the School District, its current and former School Board members, officers, employees, agents, representatives, insurers, attorneys, and other affiliates from any and all liability for any and all damages, actions, or claims—regardless of whether they are known or unknown, direct or indirect, asserted or unasserted—that arise out of or relate to any action, decision, event, fact, or circumstance occurring before Employee signs this Agreement.  Employee understands and agrees that by signing this Agreement they are waiving and releasing any and all claims, complaints, causes of action, and demands of any kind that are based on or arise under any federal or state law, including but not limited to the federal and state constitutions, or any

---

[1]Wiley does not dispute that the Release is embraced by her complaint and may be considered at this stage.  The Court notes, however, that it has not considered any of the other materials that the parties have submitted.

To the extent that Wiley's submissions are an attempt to supplement the factual allegations in her complaint, her attempt is improper, both because it is untimely and because she did not follow this District's local rules for amending a pleading.  *See* ECF No. 10 at 5 (setting a January 30, 2026, deadline for filing motions to amend the pleadings); D. Minn. L.R. 15.1 (motions to amend a pleading must include both a clean and a redlined version of the proposed amended pleading); D. Minn. L.R. 7.1(b) (before filing a nondispositive motion, a litigant must schedule a hearing); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules.").

> federal or state statute, regulation, rule, or common law.

Release § 10.  The Release goes on to identify particular types of claims being released, including each type of claim that Wiley brings in this action.  *Id.* § 10(a) (listing claims under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act); *id.* § 10(b) (listing defamation and infliction of emotional distress).  Excluded from the Release are "[a]ny rights or claims that are based on any events that occur after [Wiley] sign[s] this Agreement."  *Id.* § 11(a).

Wiley alleges that she resigned "[u]nder extreme financial and emotional duress."  Compl. ¶ 9.  This allegation is insufficient, as a matter of law, to invalidate the Release.  Under Minnesota law, "[d]uress is available as a defense to a contract only when agreement is coerced by physical force or unlawful threats."  *Bond v. Charlson*, 374 N.W.2d 423, 428 (Minn. 1985).  "Minnesota does not recognize 'economic duress' as a defense to a contract."  *Olmsted v. St. Paul Pub. Schs.*, 830 F.3d 824, 828 (8th Cir. 2016).

Here, the Release meets the requirement that it clearly "manifest the intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom the claim exists to a person who seeks to be released."  *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 902 (Minn. 2012).  Further, Wiley's decision was not rushed; the Release expressly gave Wiley *21 days* to review and consider its terms, Release § 12, and there was nearly a *month* between January 31 (when Wiley agreed to resign in lieu of termination) and

February 26 (when Wiley signed the Release).  Wiley also had access to union

representation—and, of course, she could have consulted with a lawyer at any time.

Compl. ¶¶ 3, 6 (noting the presence of union representatives at meetings with officials).

Finally, by signing the Release, Wiley acknowledged that she had an opportunity to

consult both with her union representative and with legal counsel of her choosing, that

she read and understood the agreement, and that she entered the agreement knowingly

and voluntarily.  Release ¶ 20; *cf. Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982) ("In

the absence of fraud or misrepresentation, a person who signs a contract may not avoid

it on the ground that he did not read it or thought its terms to be different.").  Wiley's

allegations therefore fail to establish that the Release is invalid.[2]  *Cf. St. Louis Park Inv.*

*Co. v. R.L. Johnson Inv. Co.*, 411 N.W.2d 288, 291 (Minn. Ct. App. 1987) (stating that "a

claim of duress will not be sustained when the claimant entered into the contract with

full knowledge of all the facts, advice from an attorney, and ample time for reflection").

Because Wiley released all claims "aris[ing] out of or relat[ing] to any action,

decision, event, fact, or circumstance" that occurred before she signed the Release—and

because the termination of her employment indisputably arises out of and relates to an

"action, decision, event, fact, or circumstance" that predated Wiley's signing of the

---

[2]Wiley's allegation that she received unemployment benefits is irrelevant to the issue of whether she validly released her claims.

Release—all of her claims that relate to the termination of her employment (or to events that occurred before the termination of her employment) are dismissed.

### C. Remaining Claims

Wiley also bases claims on several post-termination events, including: (1) tampering with her mail; (2) surveilling her at public events; (3) submitting false and defamatory information to licensing authorities; and (4) causing her to lose a prestigious internship. Compl. ¶ 12. Although the Release does not bar these claims, *see* Release § 11(a), the Court nevertheless dismisses them because they are not viable.

With respect to mail tampering: Wiley's allegations are hard to understand, but she appears to allege that a letter that she sent relating to the probate of her father's estate was returned to her sister's office without the original envelope. Compl. ¶¶ 13, 23, 36. Wiley alleges that, because the contents were returned "under a different last name," the circumstances "strongly suggest[] McAllister or Thomas were involved." Compl. ¶ 13. While Wiley does not expressly connect the dots, she seems to be implying that, because her sister attended the January 31 meeting at which Thomas and McAllister informed Wiley that she was being terminated, Thomas and McAllister were aware that her sister had a different last name.

This is a patently insufficient basis on which to infer that McAllister or Thomas—or, for that matter, any of the (presumably) hundreds of people who know

the last name of Wiley's sister—tampered with Wiley's mail. Moreover, even in the unlikely event that McAllister or Thomas had something that Wiley mailed sent to Wiley's sister's office in a different envelope, that would not give rise to a First Amendment violation, nor would it amount to intentional infliction of emotional distress. *Cf. Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 357 (8th Cir. 2020) (to prevail on a First Amendment retaliation claim, a plaintiff must show that the defendant "took adverse action against him that would chill a person of ordinary firmness from continuing in the [protected] activity"); *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 866 (Minn. 2003) (knowingly making a false police report did not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress).

With respect to surveillance: Again, it is difficult to discern why Wiley believes the defendants have surveilled her, but her claim appears to relate to the fact that, in January 2025, Wiley ran into Thomas at a professional conference. Compl. ¶ 12. Needless to say, the fact that two educators in the Twin Cities metropolitan area happened to attend the same professional conference provides no reason whatsoever to believe that one of them had the other under surveillance. This allegation simply fails to state any kind of actionable claim.

With respect to submitting false and defamatory information to licensing authorities:  Nowhere in her complaint does Wiley identify the content of these allegedly false and defamatory communications, and these allegations are therefore too vague and speculative to state a claim.

Finally, with respect to the internship:  Wiley's belief that defendants interfered with her internship appears to be based entirely on the allegation that, shortly after she ran into Thomas at the January 2025 conference, she lost the internship.  These allegations do not come close to raising Wiley's "right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

For these reasons, the Court grants defendants' motion for judgment on the pleadings with respect to Wiley's remaining claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    Defendants' motion for judgment on the pleadings [ECF No. 23] is GRANTED.

2.    This matter is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 23, 2026                    /s/ Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge